UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SERAFIMA KOZLENKO,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ et al.,<br>Respondents. | CASE NO. 2:26-cv-03241-JNW<br>ORDER |

## 1. INTRODUCTION

Serafima Kozlenko is a 20-year-old Russian citizen who was paroled into the United States on April 7, 2022. For over four years, she built a life in America where she attended school, worked in the community, and got married to a United States citizen. On September 2, 2026, Immigration and Customs Enforcement (ICE) detained her without notice or an opportunity to be heard and transferred her to the Northwest Immigration Customs Enforcement Processing Center ("NWIPC"). Kozlenko petitions for a writ of habeas corpus and a permanent injunction. Dkt. No. 1. For the reasons below, the habeas petition and request for a permanent injunction are GRANTED.

## 2. BACKGROUND

When she was fifteen years old, Kozlenko and her family left Russia to seek asylum in the United States. On April 6, 2022, they applied for admission at a port of entry in San Ysidro, California. Dkt. No. 6-1 at 2. On April 7, 2022, Customs and Border Protection (CBP) paroled Kozlenko into the United States on humanitarian grounds under 8 U.S.C. § 1182(d)(5)(A). Dkt. No. 1-4 at 2. The next day, CBP served her with a notice to appear ("NTA"), charging her as "an arriving alien" without a valid entry document. *Id.*, CBP Kozlenko's parole expired on April 4, 2023. *Id.* Kozlenko remained in the United States after the expiration of her parole, and Respondents took no action to return her to immigration custody for over three years. On July 9, 2026, the NTA from April 2022, was dismissed without removal proceedings. Dkt. No. 5 ¶ 5.

Once paroled, Kozlenko moved to Washington state. Dkt. No. 1 at 7. She attended high school and is presently a student at Edmonds College. *Id.* Additionally, Kozlenko worked as a sales associate, an assistant at a dental office, and helped her mother build a childcare business. *Id.* She married an American citizen, Pavel Kozlov, on July 30, 2026. *Id.* Kozlov filed a Form I-130, Petition for an Alien Relative on her behalf on August 1, 2026. Dkt. No. 1-5 at 2. Their petition remains pending with United States Citizenship and Immigration Services (USCIS).

In August 2026, Kozlenko received a "call-in letter" from the Department of Homeland Security (DHS) instructing her to come to the ICE Enforcement and Removal Operations (ERO) Field Office on September 2, 2026, to "discuss [her]

immigration case." Dkt. No. 1-6. When Kozlenko reported as instructed, ICE agents took her into custody and transferred her to the NWIPC where she is currently detained. Dkt. Nos. 1 at 3; 5 ¶ 6.

That same day, ICE served Kozlenko with a Warrant for Arrest, a Notice of Custody Determination, a written notice of the revocation of an Order of Recognizance ("OREC")—even though Kozlenko had never been issued one—and a second NTA charging her as "an arriving alien" without a valid entry document. Dkt. Nos. 6-4 at 2; 6-5 at 2; 6-6 at 2; 6-7 at 2. ICE also completed an "Alien Informal Interview Upon Revocation of Order of Recognizance" even though, again, Kozlenko was never issued an OREC. Dkt. No. 6-8 at 2. None of these documents identifies a decision to terminate her parole. Deportation Officer Christopher Hubbard, who was not present at the time, states that "ERO determined [Kozlenko] had moved from California to Seattle in 2022 without reporting to the ERO Seattle Field Office" and "subsequently arrested" her. Dkt. No. 5 ¶ 6. Kozlenko states that ICE provided no contemporaneous reason for her detention; it was not until after she was in custody that ICE claimed she failed to update her address. Dkt. No. 1 at 3. Kozlenko points out that, at that point, "ICE had located her, possessed her current address, mailed its own reporting notice to that address, and obtained her voluntary appearance in response." *Id.*

## 3. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## 4. DISCUSSION

### 4.1 Kozlenko's re-detention was unlawful.

Respondents contend that Kozlenko is detained under 8 U.S.C. § 1225(b)(2), which mandates detention of certain applicants for admission, and Kozlenko accepts that designation for purposes of her petition. Dkt. Nos. 4 at 1; 1 at 3. An exception to mandatory detention exists for noncitizens "parole[d] into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). Humanitarian parole, however, is not "admission" to the United States, and once terminated, the noncitizen is returned "to the custody from which [they] were paroled[.]" *Id.*

Under 8 C.F.R. § 212.5(e), there are two ways for parole to end—"automatically" or "on notice." When parole expires, it terminates automatically and written notice to the noncitizen is not required. 8 C.F.R. § 212.5(e)(1)(ii). DHS may also decide to revoke parole before it expires. To do so, "the purpose for which parole was authorized" must have been accomplished or a DHS official must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States," and DHS must provide the noncitizen written notice. 8 C.F.R. § 212.5(e)(2)(i).

Respondents contend that Kozlenko's parole automatically expired on April 4, 2023, so they did not need to provide written notice. But Respondents did not detain

Kozlenko when her parole expired, instead they waited for over three years. In such circumstances, courts in this District recognize an implied continuation of humanitarian parole, and therefore require DHS to follow 8 C.F.R. § 212.5(e)(2)(i) in order to terminate the parole. *See Kozlenko v. Hernandez et al.*, No. 2:26-CV-03194, 2026 WL 3016386, at *3 (W.D. Wash. Oct. 7, 2026) ("The parties agree that Petitioner's parole . . . [b]ut Respondents did not re-detain Petitioner for about three years after this date. . . . Accordingly, the Court finds that continuation of Petitioner's humanitarian parole was implied and she was entitled to the written notice requirement in 8 C.F.R. § 212.5(e)(2)(i)."); *Kozlenko v. Hernandez, et al.*, No. C26-3147-KKE (W.D. Wash. Sep. 28, 2026) (quoting *Colmenarez v. Hernandez*, 2026 WL 850535, at *3 (W.D. Wash. Mar. 27, 2026) ("Thus, "[t]aken together, the applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply."). *See also Popova v. Blanche*, No. C26-1229, 2026 WL 1242984, at *2 (W.D. Wash. May 6, 2026); *Len Nava v. Mullin*, No. 26-cv 2324, 2026 WL 2294576, at *3 (W.D. Wash. Aug. 10, 2026); *Fuenmayor Rodriguez v. Noem*, , No. 26-cv-673, 2026 WL 799363, at *3–4 (W.D. Wash. Mar. 23, 2026); *Sanchez Silva v. Warden Nw. Det. Ct.*, 2026 WL 925640, at *2–3 (W.D. Wash. Apr. 6, 2026) ("Several courts in this Circuit that have reviewed this question determined that neither a now-expired parole nor a noncitizen's status as an arriving alien is sufficient for the Government to revoke

parole without complying with the relevant statutory and regulatory provisions."). Therefore, 8 C.F.R. § 212.5(e)(2)(i) applies and Kozlenko was entitled to written notice.

Respondents argue, in the alternative, that they provided written notice when they served Kozlenko with a new NTA on the same day she was re-detained. But this does not comply with the regulation given that it provides no mention of why parole is being revoked, much less a determination that "the purpose for which parole was authorized" was accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Zaika v. Field Off. Dir.*, No. C26-1196-RSM, 2026 WL 1194625, at *3 (W.D. Wash. May 1, 2026) ("The Court rejects the Government's assertion that the Notice to Appear satisfied written notice requirements, as the Notice does not mention Petitioner's parole, let alone provide any basis for the revocation, and it was served on Petitioner after he was arrested and detained."). Respondents identify not such determination. Accordingly, Respondents' revocation of Kozlenko's parole and her re-detention violated federal law.

**4.2 Kozlenko's re-detention without notice and a pre-deprivation hearing violates procedural due process.**

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.* This Court has previously found no reason to distinguish

parole cases from similar cases in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026); *Gomez Candelo v. Noem*, No. 2:26-CV-00576-JNW, 2026 WL 879049, at *4 (W.D. Wash. Mar. 31, 2026). All three *Mathews* factors favor Kozlenko.

First, her private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Kozlenko lived in the community for four years. She built a full life in Washington where she went to school and married her husband. Kozlenko's liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases); *see also Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *7 (W.D. Wash. Feb. 13, 2026) ("A petitioner's liberty interest [does] not expire along with his parole.") (citation modified); *Morales v. Hernandez*, No. 2:26-CV-01686-DGE, 2026 WL 1753643, at *4 (W.D. Wash. June 18, 2026) ("Courts in this district have consistently concluded that an individual . . . who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained.").

Respondents contend that, although Kozlenko "has a liberty interest," it is "the same liberty interest as a person who had been stopped at the border." Dkt. No. 4 at 8 (citing *Pantoja Sanchez v. Hernandez*, No. 2:26-cv-00884 TMC, 2026 WL

1506130, at *3 (W.D. Wash. May 29, 2026)). But *Pantoja Sanchez* decided whether the petitioner was statutorily eligible for bond, not whether due process permits re-detention without a hearing, 2026 WL 1506130, at *2–3. The Court remains persuaded by the many decisions holding that the statute under which a noncitizen is detained does not override his constitutional due process rights. *Morales*, 2026 WL 1753643, at *4 ("Courts in this district have consistently concluded that an individual such as Petitioner who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained."); *Ramirez Tesara*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

Second, the risk of erroneous deprivation and value of additional procedures are high. Respondents argue that the risk of error is low given the procedures used; specifically, the fact that Kozlenko knew when her parole expired and she was served an NTA on September 2, 2026. "But when a noncitizen is detained after being released on humanitarian parole, 'due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) [the noncitizen] must be given the opportunity to be heard with respect to the government's basis for re-detention at a meaningful time and in a meaningful manner.'" *Kozlenko v. Hernandez et al.*, No. 2:26-CV-03194, 2026 WL 3016386, at *4 (W.D. Wash. Oct. 7, 2026) (quoting *Flores Torres v. Hermosillo*, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026)). Furthermore, the

NTA was notice of removal charges handed to a someone already in custody. Notice given to someone already in custody is not notice before the deprivation. The fact that ICE seemed to believe it was revoking an OREC, rather than humanitarian parole, underscores the clear errors committed without additional process. And the bond hearing Respondents point to as a safeguard, Dkt. No. 4 at 9, proved unavailable, as the immigration judge declined to consider bond because Respondents classify Kozlenko as an arriving alien. Dkt. No. 7 at 9. As Respondents acknowledge, the risk of erroneous deprivation "is significant where the government fails to follow its own procedures." Dkt. No. 4 at 9.

Third, Respondents' interest in re-detaining Kozlenko without a hearing is low. Nothing prevented ICE from scheduling a hearing before Kozlenko's scheduled check-in. *See E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). And Respondents' interest in re-detaining noncitizens released on humanitarian parole "without first complying with 8 C.F.R. § 212.5 is minimal: any administrative or financial burdens in complying with the regulations are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *Kozlenko v. Hernandez*, 2026 WL 2905404, at *6 (W.D. Wash. Sept. 28, 2026); *see also Dieng*, 2026 WL 411857, at *8 ("'the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations.'" (quoting *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 405 (E.D.N.Y. 2025) (citation modified)).

All *Mathews* factors favor Kozlenko and support finding that her detention violates procedural due process. *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). It is undisputed that Kozlenko did not receive a hearing before her re-detention. A "post-deprivation hearing cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, her detention violates procedural due process, and she must be released.

**4.3 Respondents must follow the law if they re-detain Kozlenko.**

Having found due process violations, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay,* 547 U.S. at 391.

Kozlenko suffered irreparable harm through the violation of her constitutional right to due process and unlawful detention. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Kozlenko, as the injunction requires only that Respondents comply with the Constitution and the law before re-detaining her. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause and ignoring the many cases that have found re-detention without notice or an opportunity to be heard is unlawful.

Kozlenko has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."

*Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained her without process, despite nearly four years of Kozlenko being a productive member of her community. This raises concern that, absent injunctive relief, she may be subject to the same due process violation again. Moreover, for months, courts in this district have repeatedly found that Respondents' conduct in revoking release and re-detaining noncitizens without pre-deprivation process is unconstitutional. Respondents "respectfully disagree" with this Court's holding to that effect, and they maintain here that Kozlenko is subject to mandatory detention and that due process required no pre-deprivation notice or hearing. Thus, the Court finds Respondents have expressed "an avowed intention to continue the challenged conduct." *Espinoza Palacios*, 2026 WL 686138, at *10 (citation modified).

Accordingly, the Court prohibits Kozlenko's re-detention while her removal proceedings remain pending unless Respondents first provide adequate notice, an individualized determination, and a meaningful opportunity to be heard at a hearing before a neutral decision maker.

## 5. CONCLUSION

Accordingly, the Court orders as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. Respondents must RELEASE Kozlenko within TWENTY-FOUR (24) hours of this order, under the conditions of her most recent parole agreement.

3. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Kozlenko has been released from custody and informing the Court of the date and time of her release.

4. While Kozlenko's removal proceedings remain pending, Respondents are permanently ENJOINED from re-detaining her absent adequate notice, an individualized determination, and a meaningful opportunity to be heard at a hearing before a neutral decision maker.

5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 19th day of October, 2026.

Jamal N. Whitehead
United States District Judge